4 P.3d 533

**STATE of Hawai'i (Plaintiff–Appellee),**

v.

**Larry ORTIZ (Defendant–Appellant).**

No. 21425.

Intermediate Court of Appeals of Hawai'i.

June 16, 2000.

**400**

Chester M. Kanai, standby attorney, on the briefs, Honolulu, for defendant-appellant, pro se.

Caroline M. Mee, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE, J., and Circuit Judge HIFO in place of LIM, J., Disqualified.

Opinion of the Court by WATANABE, J.

This appeal requires us to determine the applicability of the affirmative defenses of duress and choice of evils to a prison escape situation. Defendant–Appellant Larry Ortiz (Ortiz), who is appealing his conviction, following a jury verdict, of Escape in the Second Degree, contends that the Circuit Court of the First Circuit (the circuit court) reversibly erred by: (1) refusing to instruct the jury as to the affirmative defense of duress; (2) precluding evidence of duress that occurred subsequent to the escape; and (3) wrongly instructing the jury as to the affirmative defense of choice of evils. Ortiz also asserts that the cumulative errors committed by the circuit court prejudiced his due process right to a fair trial.

We affirm.

## BACKGROUND

On December 29, 1994, Ortiz, a prisoner at Halawa Correctional Facility (Halawa), was transported in a van by two adult correctional officers (ACOs) to the Queen's Physicians' Office Building (QPOB) for a doctor's appointment. When the van arrived at its destination, ACO Bobby Gouveia (ACO Gouveia) unlocked the sliding door of the van. As ACO Gouveia opened the door, Ortiz, who had unshackled his leg irons and handcuffs with a key he claims to have purchased in Halawa, hit ACO Gouveia's right shoulder, pushed ACO Gouveia off balance, and began running down Lusitana Street. ACO Gouveia and ACO Mario Moreno quickly gave chase, apprehended Ortiz, and took Ortiz back to Halawa.

## THE PRE–TRIAL PROCEEDINGS

As a result of the events that took place on December 29, 1994, a grand jury indicted Ortiz on October 26, 1995 and charged him with committing Escape in the First Degree, in violation of Hawai'i Revised Statutes (HRS) § 710–1020 (1993).[1]

During the course of the proceedings below, the circuit court appointed five different attorneys, Wayne Rooney, Joseph Mottl (Mottl), Stephen Shaw (Shaw), Jerry Wilson (Wilson), and Nelson Goo (Goo), to represent Ortiz, each of whom successfully moved, at Ortiz's request, to withdraw as Ortiz's counsel based on disagreements over defense strategy. Ultimately, Ortiz proceeded to trial *pro se*, with Goo as standby counsel to assist him.

A major area of disagreement between Ortiz and his various counsel related to Ortiz's insistence that certain witnesses be subpoenaed to support his claim that he escaped because he was under duress. Ortiz's various attorneys believed that the witnesses in question were irrelevant to Ortiz's duress defense and were reluctant to subpoena them. To resolve these differences, a hearing was held before a circuit court motions judge (motions judge) on December 4, 1997.

At the hearing, Goo read a long list of the contested witnesses whom Ortiz desired subpoenaed. The list included Mottl and Wil-

---

1. Hawai'i Revised Statutes (HRS) § 710–1020 (1993) reads as follows:

   **Escape in the first degree.** (1) A person commits the offense of escape in the first degree if the person intentionally employs physical force, the threat of physical force, or a dangerous instrument against the person of another in escaping from a correctional or detention facility or from custody.

   (2) Escape in the first degree is a class B felony.

son, his former attorneys in this escape case, as well as American Civil Liberties Union (ACLU) attorneys Eric Seitz (Seitz) and Daniel Foley (Foley). The list also included the chief justice of the Hawaiʻi Supreme Court, an associate judge of the Intermediate Court of Appeals, and various circuit court judges, all of whom had been involved in different aspects of this case; the former City and County of Honolulu chief of police; the former City and County of Honolulu prosecutor; the former State of Hawaiʻi public defender; and a former warden of Halawa, Guy Hall (Hall).

Ortiz's explanation as to why he believed the contested individuals were relevant to his duress defense was somewhat confusing, and the motions judge questioned Ortiz extensively in an effort to understand the connection between the proposed witnesses and Ortiz's duress defense:

> THE COURT: Let me see if I understand you correctly.
>
> You are saying that while you were incarcerated, you were subjected to beatings by prison guards that led to your duress which would be a defense to the escape charge?
>
> [ORTIZ]: Not only the beatings, like I said, but illegal imprisonment—all the things I was trying to prove a lie by the attorneys and everything else.
>
> THE COURT: The lies of the attorneys supposedly, if anything happened, happened after the escape charge; right?
>
> [ORTIZ]: After the escape charge but yet they are part of the escape thing itself because I'm not getting my, what you call, due process. That's why I'm stating from the beginning that started duress. But yet, the duress has not ended. I'm even being punished by [Plaintiff–Appellee State of Hawaiʻi (the State)] because safety by the jail.
>
> I not working. They refuse to let me work. I'm stuck in the corner with the unseen punished, Your Honor. I don't have no fun. I don't even have to put body deodorant on me because the State took away that ten dollar a month. But I seek every month to employ myself. But since this thing happened, since this escape that

has happened, I still going under duress. I'm to the point where I'm trying to keep my sanity.

> THE COURT: If you are going under duress, none of that would be an excuse to your escape charge because it happened after your escape charge; right?
>
> [ORTIZ]: It happened from the day—from 1987, December 29. Started from there. But yet, it didn't end, yet.
>
> THE COURT: Who do you allege beat you up in prison before you escaped, say, sometime in '94?
>
> [ORTIZ]: Okay, Your Honor.
>
> '93, where I was reported on that day or the day after ACO Santiago got stabbed—allegedly got stabbed, that was '93—I was assaulted by ACO Lyman and Sergeant Kanoa.
>
> . . . .
>
> THE COURT: And the other time you were assaulted?
>
> [ORTIZ]: The day they brought me back from the police department of the attempted escape I was assaulted by ACO Bobby Andrade [ (ACO Andrade) ], Patrick Camiso, Gene Burns, and another unknown ACO that I never did find out his name.
>
> . . . .
>
> THE COURT: And this was the day after December 29th, 1994; is that what you're saying? Happened on December 30th, 1994?
>
> [ORTIZ]: December 29th.
>
> THE COURT: The same day?
>
> [ORTIZ]: The same day after they brought me back from Pearl City Police Station, they was putting me in the lockup. And that's when I got assaulted.
>
> THE COURT: Okay. Any other alleged assaults?
>
> [ORTIZ]: I got assaulted when I was up at the high [security facility] after the State—when the Public Defender told the ACO that I wrote—I wrote her up because of the allegation. And she turned around and told the ACO's that I wrote them up. So the ACO's confronted me saying that Cinda Sanders told them that I wrote

them up. I got assaulted because Sergeant Darrell Heen, he knows Keith Kiaina.

THE COURT: And that alleged assault happened after December 29, 1994?

[ORTIZ]: Yes.

THE COURT: How long after?

[ORTIZ]: In the amount of lockup for the escape. But that was a year later.

THE COURT: A year later?

[ORTIZ]: Yeah.

THE COURT: When did you contact [Seitz] and [Foley]?

[ORTIZ]: [Foley], I contact him before '93 when he was with the ACLU.

THE COURT: How about [Seitz]? When did you contact him?

[ORTIZ]: After that assault by the ACOs.

THE COURT: So before or after December 29, 1994?

[ORTIZ]: [Seitz] after, [Foley] before.

After further questioning of Ortiz, the motions judge orally ruled, in relevant part, as follows:

> For that [defense of duress] to operate, the duress had to occur before the alleged escape. So I will allow subpoenas to be issued to [Foley] and to [Hall], who I'm not sure but based on what you said may have been the warden during the time frame before December 29, 1994 or would have information regarding any incidents within the facility that might have involved you before December 29, 1994.

Other than that, it appears that your so-call [sic] claim of duress occurring after the date of the alleged date of offense, and if it involved any of your right [sic] under State law, rule or constitution, they can be addressed through this process. If your rights have been violated and you have not received a recourse for that, you can take the matter up on appeal. And I don't think it goes to the facts regarding the alleged defense.

When Ortiz sought a further explanation from the motions judge as to why the judges he wanted to subpoena were irrelevant to his defense, the judge informed Ortiz:

> [T]he fact that you may or may not be having duress at the present time does not give you a defense to the charge of Escape on December 29, 1994.

### THE TRIAL PROCEEDINGS

At the trial that commenced on December 8, 1997, the State called two witnesses to the stand. ACO Gouveia described the events on December 29, 1994 that led to Ortiz's arrest for Escape in the First Degree. Additionally, Richard Mello, a case manager at Halawa, testified that Ortiz did not have permission to leave custody on December 29, 1994.

Ortiz raised two affirmative defenses to the escape charge against him at trial. First, he claimed, under HRS § 702–231 (1993),[2] that he escaped because he was under duress. Second, he raised the HRS § 703–302 (1993)[3] defense of choice of evils,

---

2. HRS § 702–231 (1993) provides, in relevant part, as follows:

    **Duress.** (1) It is a defense to a penal charge that the defendant engaged in the conduct or caused the result alleged because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

    . . . .

    (4) When the conduct of the defendant would otherwise be justifiable under section 703–302, this section does not preclude the defense of justification.

    (5) In prosecutions for any offense described in this [Hawai'i Penal] Code, the defense asserted under this section shall constitute an affirmative defense. The defendant shall have

the burden of going forward with the evidence to prove the facts constituting such defense, unless such facts are supplied by the testimony of the prosecuting witness or circumstance in such testimony, and of proving such facts by a preponderance of the evidence pursuant to section 701–115.

3. HRS § 703–302 (1993), in relevant part, states:

    **Choice of evils.** (1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to another is justifiable provided that:

    (a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and

    (b) Neither the [Hawai'i Penal] Code nor other law defining the offense provides excep-

also sometimes referred to as the "necessity defense."

To support his defenses at trial, Ortiz subpoenaed thirty individuals, who, according to Ortiz, had "created" his duress or the necessity for his escape. Among those actually called to the witness stand were: the attorney who had represented Ortiz on the charges for which Ortiz was incarcerated at the time of his escape; an assistant disciplinary counsel for the Office of Disciplinary Counsel, with which Ortiz had lodged complaints against several of his former attorneys; and various ACOs, nurses, social workers, and other staff employed at Halawa.

Ortiz had intended to call as witnesses Sergeant Kanoa and ACO Lyman, who were accused of slamming him against a prison wall and injuring him. However, they apparently had called in sick every day for a week and were never served with their subpoenas. The trial judge refused to allow additional time for service, stating that Ortiz had already been given enough time to serve Sergeant Kanoa and ACO Lyman. Additionally, despite the earlier ruling by the motions judge that Foley could be subpoenaed, the trial judge ruled that Foley's testimony would not be relevant.

The following exhibits were stipulated into evidence: Ortiz's Exhibits "A" and "B", which were photographs of Ortiz's facial area in April 1993, showing injuries he allegedly received from an assault by Sergeant Kanoa and ACO Lyman; Exhibit "C", which included Ortiz's medical records from 1988 to December 29, 1994; and a medical report of injuries received on December 27, 1994, two days prior to the escape, allegedly caused when ACOs assaulted Ortiz; and Exhibit "E", which included Ortiz's grievance records from 1988 to December 29, 1994.

The thrust of Ortiz's defense strategy was to demonstrate that:

(1) He had been ill-served by the attorney who had represented him on the charges for which he was serving prison time and was thus incarcerated unfairly;

(2) Because Ortiz had lodged numerous complaints about unsanitary and unsafe conditions at Halawa and had reported illegal or improper conduct by various Halawa staff, he had been subjected to beatings by ACOs, deprived of necessary medical treatment, terminated from his job in the Halawa kitchen, and threatened by various individuals, causing him to fear for his safety; and

(3) He had attempted, unsuccessfully, to resolve his various grievances through administrative channels.

Throughout the trial proceedings below, the trial judge indicated his intention to instruct the jury on both the duress and choice of evils or necessity defenses.[4] After all the evidence was in, however, the trial judge refused to give a duress instruction, rational-

tions or defenses dealing with the specific situation involved; and

(c) A legislative purpose to exclude the justification claimed does not otherwise plainly appear.
....

(3) In a prosecution for escape under section 710–1020 or 710–1021, the defense available under this section is limited to an affirmative defense consisting of the following elements:

(a) The actor receives a threat, express or implied, of death, substantial bodily injury, or forcible sexual attack;

(b) Complaint to the proper prison authorities is either impossible under the circumstances or there exists a history of futile complaints;

(c) Under the circumstances there is no time or opportunity to resort to the courts;

(d) No force or violence is used against prison personnel or other innocent persons; and

(e) The actor promptly reports to the proper authorities when the actor has attained a position of safety from the immediate threat.

4. For example, the trial judge stated at one point during the trial as follows:

Now, I understand what you're saying, [Ortiz]. The *[c]ourt will be giving an instruction* to the jury at the end of the case after all the evidence is in what choice of evil means and *what duress means.* You and your attorney can get together and fashion an instruction, a proposed instruction, to the [c]ourt as to what you think duress means and choice of evils defense is. Okay. And you can prepare it, and then we'll go over it, and you'll be able to come into chambers, and we're going to work it over as to what the proper instruction is. Okay. And then we'll instruct the jury before they go in to deliberate.
(Emphases added.)

izing that the duress and choice of evil defenses were inconsistent:

> [T]he [c]ourt is refusing the duress instruction because the choice of evils instruction, which is statutory, which is [HRS] Section 703–302, is a specific instruction which governs the circumstances in this case, and that the specific law will govern over the general law regarding duress. The elements of proof in duress and the elements of proof in the choice of evils defense is [sic] inconsistent, and therefore would be confusing for the jury.

On December 15, 1997, the jury found Ortiz guilty of the included offense of Escape in the Second Degree, a violation of HRS § 710–1021 (1993).[5] On February 26, 1998, the State moved for an extended term of imprisonment,[6] and on March 12, 1998, Ortiz was sentenced to incarceration for a period of ten years, to run consecutively to any sentence presently being served. This timely appeal followed.

## DISCUSSION

A. *Whether the Trial Judge Correctly Held That the Duress and Choice of Evils or Necessity Defenses Were Statutorily Inconsistent*

▮ We agree with Ortiz that the trial judge was wrong when he concluded that the choice of evils defense was more specific than the duress defense and, therefore, as a matter of statutory law, it would be inconsistent and confusing to give the jury an instruction on both defenses.

Subsection (4) of HRS § 702–231, which governs the affirmative defense of duress, specifically provides as follows:

> (4) When the conduct of the defendant would otherwise be justifiable under sec-

tion 703–302 [relating to the choice of evils justification defense], this section does not preclude the defense of justification.

HRS § 702–231(4) is patterned after section 2.09[7] of the American Law Institute's Model Penal Code (1985) (MPC). According to the Explanatory Note to MPC § 2.09:

> *Subsection (4) assures that this section will not be construed to narrow the effect of the choice of evils defense afforded by Section 3.02. This intention is that the defenses of duress and choice of evils will be independently considered,* and that the fact that a defense is unavailable under one section will not be relevant to its availability under the other.

Explanatory Note to MPC § 2.09 (1985) (emphasis added).

In light of the literal language of HRS § 702–231(4) and the foregoing explanation as to the purpose of subsection (4), it is clear that the choice of evils and duress defenses are not, as a matter of statutory law, inconsistent.

An "accused is entitled to an instruction on every defense supported by the evidence, no matter how inconclusive the evidence may be, provided that evidence would support consideration of that issue by the jury." *State v. McMillen*, 83 Hawai'i 264, 265, 925 P.2d 1088, 1089 (1996). Additionally,

> [a] defendant has the right to argue inconsistent defenses and he [or she] would be entitled to have the jury instructed on ostensibly inconsistent theories of defense *if there is evidence supporting the theories.* He [or she] would be entitled also to an instruction on a defense fairly raised by the evidence, though it may be inconsistent with the defense he advanced at trial.

---

5. HRS § 710–1021 (1993) reads as follows:

> **Escape in the second degree.** (1) A person commits the offense of escape in the second degree if the person intentionally escapes from a correctional or detention facility or from custody.
> (2) Escape in the second degree is a class C felony.

6. Plaintiff–Appellee State of Hawai'i's Motion for Extended Term of Imprisonment is missing from

the record on appeal. However, the order granting the motion is included in the record on appeal, volume 2, at 217.

7. Section 2.09, entitled "Duress," of the American Law Institute's Model Penal Code (1985), states:

> (4) When the conduct of the actor would otherwise be justifiable under Section 3.02 [relating to the choice of evils defense], this Section does not preclude such defense.

*State v. Ito,* 85 Hawai'i 44, 46, 936 P.2d 1292, 1294, *cert. denied,* 85 Hawai'i 196, 940 P.2d 403 (App.1997) (italics omitted).

Consistent with the foregoing principles, Ortiz was entitled to an instruction on the duress defense, even if the defense was inconsistent with the choice of evils defense, as long as some evidentiary support for the essential components of the duress defense was introduced. *State v. Horn,* 58 Haw. 252, 255, 566 P.2d 1378, 1380 (1977). We examine, therefore, whether evidence was adduced below to support the giving of a duress defense instruction.

B. *Whether Evidence of the Elements of a Duress Defense Were Presented so as to Require the Giving of a Duress Instruction*

1.

■ At common law, the defense of duress was conceptually quite distinct from the defense of choice of evils or necessity. As the United States Supreme Court explained in *United States v. Bailey,* 444 U.S. 394, 409–10, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980):

Common law historically distinguished between the defenses of duress and necessity [or choice of evils]. Duress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law. While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils.

*See also* Annot., "Duress, Necessity, or Conditions of Confinement as Justification for Escape from Prison," 54 A.L.R.5th 141 § 2[a] at 165–66 (1997).

Today, most states, including Hawai'i, have adopted penal codes that expressly provide for the separate defenses of duress and choice of evils or necessity. 1 W. LaFave & A. Scott, Jr. *Substantive Criminal Law* § 5.3, at 620 and § 5.4, at 634–40 (1986).

However, because courts, especially in the context of prison escape cases, have often referred to the defenses interchangeably, confusion has arisen as to what constitutes the elements of the two defenses and whether the defenses are distinguishable. *See People v. Unger,* 66 Ill.2d 333, 5 Ill.Dec. 848, 362 N.E.2d 319, 322 (1977); 1 *Substantive Criminal Law* § 5.4, at 628. We examine, therefore, what constitutes the components of both defenses under our penal code.

2.

■ The choice of evils defense is codified in HRS § 703–302, which provides, in relevant part, as follows:

**Choice of evils.** (1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to another is justifiable provided that:

(a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and

(b) Neither the [Hawai'i Penal] Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(c) A legislative purpose to exclude the justification claimed does not otherwise plainly appear.

. . . .

(3) In a prosecution for escape under section 710–1020 or 710–1021, the defense available under this section is limited to an affirmative defense consisting of the following elements:

(a) The actor receives a threat, express or implied, of death, substantial bodily injury, or forcible sexual attack;

(b) Complaint to the proper prison authorities is either impossible under the circumstances or there exists a history of futile complaints;

(c) Under the circumstances there is no time or opportunity to resort to the courts;

(d) No force or violence is used against prison personnel or other innocent persons; and

(e) The actor promptly reports to the proper authorities when the actor has attained a position of safety from the immediate threat.

In the context of a prison escape, therefore, the elements listed in paragraphs (a) through (e) of subsection (3) of HRS § 703–302 must be present before an instruction on the choice of evils defense would be warranted.

### 3.

▇ In contrast, the duress defense is found in HRS § 702–231.[8] The plain language of HRS § 702–231(1) allows a duress defense to be used only if the defendant "engaged in the conduct or caused the result alleged *because he [or she] was coerced to do so by the use of, or a threat to use, unlawful force against his [or her] person ..., which a person of reasonable firmness in his [or her] situation would have been unable to resist.*" (Emphasis added.) Based on the literal language of the foregoing statute, the following must be present for the duress defense to be applicable: (1) the defendant must have been coerced to commit the conduct of escape; (2) the coercion must have occurred through the use of, or a threat to use, unlawful force against the defendant's person or the person of another; and (3) a person of reasonable firmness in the defendant's situation would not have been able to resist escaping if unlawful force had similarly been used or threatened against that person.

According to the Commentary on HRS § 702–231:

A narrow defense is provided in this section for the defendant who claims that the defendant's conduct resulted not from the defendant's own culpability but rather from coercion exercised upon the defendant by a third party. It cannot be said that the defendant's conduct is not "voluntary" as that term is used in the penal law, because the defendant's conduct does result from the defendant's conscious determination. Rather, the basis for permitting the defense is the rationale that the penal

law ought not to condemn that which most persons would do in similar circumstances.

The defendant is afforded by this section an affirmative defense if the defendant engaged in the conduct or caused the result alleged because of the use or threatened use of unlawful force against the defendant or another and a person of reasonable firmness would have been unable to resist such duress. Although the "reasonable [person]" standard is employed in a limited manner, the [Hawai'i Penal] Code has not invoked a negligence standard for penal liability in all cases of duress. The conscious decision to yield in a duress situation is distinguishable from the inadvertent disregard of unknown risks in the case of negligence.

HRS § 702–231 is patterned after MPC § 2.09. The Commentary on MPC § 2.09 states that "[t]he typical situation in which the section will be invoked is one in which the actor is told that unless he performs a particular criminal act a threatened harm will occur and he yields to the pressure of the threat, performing the forbidden act." *Model Penal Code and Commentaries,* Comment on § 2.09, at 376 (Official Draft and Rev. Comments 1985). The Commentary also mentions two atypical situations that the duress defense could arguably apply to:

First, suppose that by the continued use of unlawful force, persons effectively break down the personality of the actor, rendering him [or her] submissive to whatever suggestions they make. They then, using neither force nor threat of force on that occasion, suggest that he [or she] perform a criminal act; and the actor does what they suggest. The "brainwashed" actor would not be barred from claiming the defense of duress, since he [or she] may assert that he [or she] was "coerced" to perform the act by the use of unlawful force on his [or her] person. He [or she] might also argue that he [or she] is responding to earlier threats to use unlawful force that have rendered him [or her] sub-

---

8. See footnote 2 for the text of HRS § 702–231.

missive to those who made the threats because he [or she] still subconsciously fears they will be carried out. . . .

The second atypical situation is one in which force or threats are employed to get the actor to perform one act; to avoid performing that act, he [or she] performs a different, and criminal act. An example would be a prisoner who escapes from prison in response to a threatened homosexual assault. The prisoner may, under Section 3.02, claim that he [or she] chose the lesser of two evils; may he [or she] claim alternatively that a person of reasonable firmness would not have resisted escaping even if the justification of Section 3.02 is lacking? Although it may stretch ordinary language slightly to say that the prisoner was "coerced to escape," Section 2.09 should not be read to bar such a case, since on grounds of policy it should not matter whether the crime committed by the victim of coercion is one the author of coercion demands.

*Id.* at 376–77.

4.

Other courts that have closely analyzed the applicability of the duress and choice of evils defenses in a prison escape context have concluded that the defenses are distinguishable and require different evidentiary proof.

In *People v. Condley,* 69 Cal.App.3d 999, 138 Cal.Rptr. 515 (1977), a California Court of Appeals, relying on *People v. Lovercamp,* 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (1975), noted that the defense of necessity is available to prisoners charged with escape only when the following conditions exist:

(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; (3) There is no time or opportunity to resort to the courts; (4) There is no evidence of force or violence used toward prison personnel or other 'innocent' persons in the escape; and (5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

*Condley* at 1008, 138 Cal.Rptr. at 519. The court explained the distinction between the defense of necessity or choice of evils and the defense of duress, as follows:

The common characteristic of all the decisions upholding the excuse of duress lies in the immediacy and imminency of the threatened action; each represents the situation of a present and active aggressor threatening immediate danger; none depict a phantasmagoria of future harm. In order for duress or fear produced by threats or menace to be a valid, legal excuse for doing anything, which otherwise would be criminal, the act must have been done under such threats or menaces as show that the life of the person threatened or menaced was in danger, or that there was reasonable cause to believe and actual belief that there was such danger. To establish duress a defendant would have to show that he [or she] had (1) an actual belief his [or her] life was threatened and (2) a reasonable cause for such belief. Because of the immediacy requirement, a person committing a crime under duress has only the choice of imminent death or executing the requested crime. The person being threatened has no time to formulate what is a reasonable and viable course of conduct nor to formulate criminal intent. *The unlawful acts of the person under duress are attributed to the coercing party who supplies the requisite mens rea and is liable for the crime.*

*Id.* at 1011–12, 138 Cal.Rptr. at 521–22 (emphasis added; brackets, citations, and quotation marks omitted).

In *Unger,* 66 Ill.2d 333, 5 Ill.Dec. 848, 362 N.E.2d 319 (1977), the Supreme Court of Illinois was called upon to decide whether a criminal defendant who claimed that he had escaped from a prison honor farm to avoid repeated homosexual attacks from fellow inmates was entitled to instructions on the defenses of compulsion, the Illinois equivalent of the duress defense, and necessity. After surveying the literature and case law available on the law of compulsion and necessity as applied to prison escape situations, the supreme court noted that "the defense of compulsion generally requires an impending,

imminent threat of great bodily harm together with a demand that the person perform the specific criminal act for which he [or she] is eventually charged." Additionally, "where the defense of compulsion is successfully asserted the coercing party is guilty of the crime." *Id.* 5 Ill.Dec. 848, 362 N.E.2d at 322. The court then concluded that with respect to prison escapes induced by fear of homosexual assaults and accompanying physical reprisals, the applicable defense is necessity and not compulsion. *Id.* The court reasoned as follows:

> In a very real sense, the defendant here was not deprived of his free will by the threat of imminent physical harm which . . . appears to be the intended interpretation of the defense of compulsion as set out in section 7–11 of the Criminal Code. Rather, if defendant's testimony is believed, he was forced to choose between two admitted evils by the situation which arose from actual and threatened homosexual assaults and fears of reprisal. *Though the defense of compulsion would be applicable in the unlikely event that a prisoner was coerced by the threat of imminent physical harm to perform the specific act of escape, no such situation is involved in the present appeal.*

*Id.* (citations omitted; emphasis added). *See also People v. Hocquard,* 64 Mich.App. 331, 236 N.W.2d 72, 74–75 (1975) (holding that where the defendant claimed that he attempted to escape because he was being denied needed medical treatment, the proper defense was necessity, not duress).

### 5.

In this case, no evidence was produced that Ortiz was coerced through the use of threats to use unlawful force to commit the crime of escape. Furthermore, no evidence was adduced that Ortiz was coerced to perform some other act, through the use of, or threat to use, unlawful force against his person, and that Ortiz escaped to avoid having to perform such act.

■ Because duress is an affirmative defense, "the defendant has the burden of going forward with the evidence to prove facts constituting the defense and of proving such facts by a preponderance of the evidence." *State v. Fukusaku,* 85 Hawai'i 462, 481, 946 P.2d 32, 51 (1997) (holding that the duress defense did not apply because the defendant, who was charged with murder, did not present evidence of the use or threatened use of unlawful force against him).

Based on our review of the record, we conclude that although evidence was adduced by Ortiz to support the giving of a choice of evils defense, there was no evidence adduced to support the giving of an instruction on the duress defense. Therefore, although the trial judge's reason for denying the duress instruction was wrong, we nevertheless hold that the instruction was properly denied.

### C. *Whether the Trial Judge Properly Precluded Evidence of Duress Occurring After a Prison Escape as Irrelevant*

In connection with his duress defense, Ortiz claims that the trial judge erred by limiting the evidence of duress to events occurring prior to his escape. For example, the trial judge refused to order subpoenas for ACOs Andrade and Burns, who Ortiz claims assaulted him a few hours *after* his escape, and found testimony of attorneys who represented Ortiz *after* his escape to be irrelevant.

■ A trial judge's determination, pursuant to Hawai'i Rules of Evidence Rule 401, as to the relevance of proffered evidence, is reviewed on appeal under the right/wrong standard. *State v. Alston,* 75 Haw. 517, 538, 865 P.2d 157, 168 (1994). Events occurring after a contested event are generally not relevant. *See, e.g., Myers v. South Seas Corp.,* 10 Haw.App. 331, 350, 871 P.2d 1235, 1245 (1992) (holding that testimony regarding actions after an assault were not relevant to whether the defendant exercised reasonable care in preventing the assault). As the witnesses whom Ortiz was precluded from calling were to testify about events that occurred after Ortiz's escape, their testimony would not have been relevant to an escape that occurred before the events had taken place. Therefore, the trial judge was correct in refusing such evidence on relevancy grounds.

D. *The Correctness of the Instruction as to the Choice of Evils Defense*

The trial judge instructed the jury on the choice of evils defense as follows:

In a prosecution for escape, choice of evils is an affirmative defense, and if proved by the defendant, requires you to find the defendant not guilty. To prove the choice of evils defense, the defendant must prove by a preponderance of the evidence each of the following elements. (1), The defendant received a threat, express or implied, of death, substantial bodily injury or forcible sexual attack, *and the threatened harm was imminent.* (2), The complaint to the proper prison authorities was either impossible under the circumstances, or there exists a history of futile complaints. (3), Under the circumstances, there was no time or opportunity to resort to the courts. (4), No force or violence was used against prison personnel or other innocent persons.

If you find that the defendant has proved the four elements of, quote, "choice of evils," close quote, defense by a preponderance of the evidence; that is, it is more likely than not or more probable than not the elements existed, then you must find the defendant not guilty of escape.

If the defendant has not proved by a preponderance of the evidence each of the elements of the choice of evils defense, then the choice of evils defense does not apply.

▉ Ortiz argues that the "trial court erroneously instructed the jury on the choice of evils defense by requiring the evil or harm sought to be avoided had to be imminent." He argues that whereas the general choice of evils justification defense set forth in HRS § 703–302(1) includes an element of immediacy, the specific prison escape choice of evils affirmative defense set forth in HRS § 703–302(3) does not. We disagree.

"When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Holbron*, 80

Hawai'i 27, 32, 904 P.2d 912, 917 (1995) (quotation marks and emphasis omitted).

Subsection (3) of HRS § 703–302 starts off by providing that "[i]n a prosecution for escape under section 710–1020 or 710–1021, *the defense available under this section* is limited to an affirmative defense consisting of the following elements[.]" (Emphasis added.) Therefore, the more specific choice of evils affirmative defense for prison escape situations set forth in subsection (3) must be construed in conjunction with the more general choice of evils justification defense set forth in subsection (1) of HRS § 703–302, which states, in relevant part, as follows:

(1) *Conduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to another* is justifiable provided that:

(a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

. . .

(Emphasis added.) Thus, any escape on the part of a prisoner must be conduct which a prisoner believes to be necessary to avoid any imminent harm or evil to the prisoner. Moreover, the explicit language of subsection (3) of HRS § 703–302 states, in relevant part, that in an escape situation, the choice of evils defense is available if, *inter alia*, "there is no time or opportunity to resort to the courts" and "[t]he actor promptly reports to the proper authorities when the actor has attained a position of safety from the *immediate* threat." (Emphasis added.)

Subsection (3) was added to the HRS § 703–302 choice of evils defense in 1986 to codify the holding of the Hawai'i Supreme Court in *State v. Horn*, 58 Haw. 252, 566 P.2d 1378 (1977). Progress Report of the Judicial Council Committee on Penal Code Revision and Reform at 8–9 (January 16, 1984). In *Horn*, the supreme court was asked to decide whether the general choice of evils defense now set forth in subsection (1) of HRS § 703–302 was available to a prison escapee. The supreme court held that the defense was available, provided certain conditions were met. Specifically, the supreme court adopted the rationale and conditions

imposed by the California Court of Appeals in *People v. Lovercamp, supra* at 541, with one principal modification:

> HRS § 703–302 ... provides that "conduct which the actor believes to be necessary to avoid an imminent harm or evil to himself or to another is justifiable" when the "harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged." We think it to be more consistent with this statutory language to hold that a *specific* threat of death, forcible sexual attack, or substantial bodily injury is not required. It is enough that specific and articulable conditions within the prison exist which seriously expose the prisoner to severe injury. But there must be some support in the evidence that the danger existed, that the defendant was vulnerably exposed to the danger, and that *the threatened harm to him was imminent.*

*Horn,* 58 Haw. at 254, 566 P.2d at 1380 (brackets omitted; italicized emphasis in original; emphasis added).

Therefore, the trial judge was correct when he instructed the jury that the threatened harm from which Ortiz sought to escape had to be imminent.

### E. *Other Alleged Errors*

Ortiz claims that multiple errors were committed below that contributed to his conviction and denied him a fair trial and due process. Upon review of the record, we conclude that there is no merit to Ortiz's claims.

### CONCLUSION

Based on the foregoing discussion, we affirm the March 12, 1998 Judgment, Guilty Conviction and Sentence.

